UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| **ROBERT SWATHWOOD II,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:06-CV-360 |
| | ) | |
| **MICHAEL J. ASTRUE,**[1] | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff Robert Swathwood II appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB").[2] (Docket # 1.) In short, because the Administrative Law Judge ("ALJ") properly evaluated Swathwood's credibility, the Commissioner's decision will be AFFIRMED.

### I. FACTUAL AND PROCEDURAL BACKGROUND[3]

Swathwood filed an application for DIB on April 19, 2002, alleging a disability onset date of August 16, 2001. (Tr. 62-64.) After his claim was denied initially and upon reconsideration, Swathwood requested an administrative hearing. (Tr. 37, 39, 55.) On January

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security; therefore, Michael J. Astrue is automatically substituted for Jo Anne B. Barnhart as the Defendant in this case. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

[2] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

[3] The administrative record in this case is voluminous (365 pages), and the parties' disputes involve only small portions of it, namely whether the ALJ improperly evaluated Swathwood's credibility. Therefore, in the interest of brevity, this Opinion recounts only the portions of the record necessary to the decision and thus excludes a detailed account of the medical evidence.

14, 2004, ALJ Dennis R. Kramer conducted a hearing at which Swathwood, his wife, and a vocational expert ("VE") testified. (Tr. 272-329.) After additional consultative examinations were conducted, another hearing was held on January 15, 2005, at which Swathwood, his wife, the VE, and a medical expert ("ME") testified. (Tr. 330-65.) The ALJ then rendered an unfavorable decision on November 17, 2005. (Tr. 25-36.) The Appeals Council denied Swathwood's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 4-7, 21.) Swathwood filed here on November 6, 2006, seeking review of the Commissioner's decision, and the matter is now fully briefed. (Docket # 1, 21-22, 26.)

At the time of the ALJ's decision, Swathwood was twenty-nine years old and was a high school graduate.[4] (Tr. 72.) His past employment experience includes working as a meat cutter, mechanic, and floor cleaner. (Tr. 105.) He claims he can no longer work due to torticollis,[5] a learning disorder, depression, and anxiety. (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Opening Br.") 2.)

Swathwood's sole challenge in this appeal is that the ALJ improperly evaluated his testimony regarding his alleged inability to concentrate. In that regard, Swathwood testified at the first hearing that his head is constantly tilted to the right so that his chin is almost touching his shoulder and that he also experiences tremors. (Tr. 281.) Reporting that he has difficulty concentrating as a result of his condition, Swathwood explained that "with your head bouncing back and forth, it's hard to focus . . . ." (Tr. 281-82.) He further reported that due to his problems

---

[4] Swathwood also indicated that he attended special education classes and that he completed two years of college. (Tr. 72.)

[5] Torticollis is defined as "[a] contraction, or shortening, of the muscles of the neck, chiefly those supplied by the accessory nerve (NXI); the head is drawn to one side and usually rotated so that the chin points to the other side." *Stedman's Medical Dictionary* 2002 (28th ed. 2006).

concentrating, it is frustrating for him to read and it takes "a while" for him to write. (Tr. 300.) When the ALJ asked Swathwood how long he is able to concentrate on a task, he responded that he can do a task for fifteen to twenty minutes before he becomes frustrated and then has to stop what he is doing for approximately an hour to an hour and one-half. (Tr. 300, 311.)

Swathwood admitted that despite his impairment, he is able to walk and has no difficulties climbing stairs. (Tr. 290, 302, 305.) Regarding his ability to stand, he testified that about once a month he will lose his balance because he gets dizzy due to his head shaking, explaining that he did not believe he could work at a job where he has to stand eight hours a day. (Tr. 302-03.) Swathwood further reported that his dizziness lasts for about ten to fifteen minutes and that he has to sit or lie down for relief. (Tr. 305.) In addition, he testified that he only climbs ladders when someone is with him, that he loses his balance when kneeling and squatting, and that he unable to bend over to touch his toes. (Tr. 305-06.)

Regarding his ability to lift and carry, Swathwood reported that he can carry his three-year-old daughter; however, he did not believe that he could carry her for two and one-half hours. (Tr. 303-04.) Although he testified that he could carry two gallons of milk, he explained that he could not carry them for two and one-half hours because he would forget what he was doing and drop at least one of them. (Tr. 304.)

Finally, when asked if he had any mental problems and if he was getting any psychological help, Swathwood responded in the negative. (Tr. 309.)

Swathwood's wife corroborated his testimony that he can only concentrate for about fifteen to twenty minutes at a time. (Tr. 324.) She explained that due to his problems concentrating, Swathwood "messes up" more, becomes frustrated and irritable, starts shaking,

3

and even has trouble watching television. (Tr. 323-24.)

In one of the ALJ's hypotheticals, the ALJ asked the VE if a claimant could perform work if he was able to concentrate on a task for only fifteen to twenty minutes before having to take a break for about a half hour to one and one-half hours. (Tr. 320.) The VE responded that such an individual could not perform sustained, gainful, competitive employment.[6] (Tr. 320.)

At the second hearing, Swathwood testified that he had many of the same abilities and limitations as he did at the time of the first hearing one year earlier, specifically explaining that his problems focusing are "still about the same." (Tr. 336-38, 342.) In addition, he reported that he started taking antidepressant medication about one year ago and that it has helped "[a] little bit." (Tr. 339, 341.)

During this hearing, a neurologist testified as an ME, explaining that upon review of the medical records, he concluded that Swathwood does indeed have a problem with spastic torticollis. (Tr. 345, 347.) The ME observed that Swathwood has had a mild amount of pain off and on; that various treatments have provided him with temporary, but not permanent, improvement; and that the physical and neurological examinations are "generally pretty good," except for some signs of depression. (Tr. 347.) Thus, the ME opined that Swathwood's torticollis is not severe, although it does interfere with some of his functions. (Tr. 347.)

When questioning the ME about Swathwood's various abilities and limitations, the ALJ specifically asked if Swathwood's torticollis has "anything to do with . . . the ability to think, or like his focusing 15 to 20 minutes, or is this the mental side . . . ?" (Tr. 352.) The ME responded, "No, he apparently is satisfactory in that area, except for a mild depression. There's some

---

[6] The VE reiterated this opinion at the second hearing. (Tr. 358.)

limitation in full schooling, but otherwise, I would say he's functioning satisfactorily in that area." (Tr. 352-53.)

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## III. DISCUSSION

### A. Legal Framework

Under the Act, a claimant is entitled to DIB if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

5

impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether Swathwood is disabled as defined by the Act, the ALJ conducted the familiar five-step analytical process, which required him to consider the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[7] *See* 20 C.F.R. § 404.1520; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

### B. The ALJ's Decision

In a written decision issued on November 17, 2005, the ALJ determined that Swathwood

---

[7] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

was not disabled. (Tr. 28-36.) The ALJ decided in Swathwood's favor at step one. (Tr. 30.) At step two, the ALJ determined that Swathwood's torticollis was a severe impairment but that his adjustment disorder was not a severe impairment. (Tr. 30-31.) He then found at step three that Swathwood's impairments or combination of impairments did not meet or medically equal a listing. (Tr. 31.)

The ALJ then ascertained that Swathwood had the following RFC: "[T]he claimant has the residual functional capacity to perform work that does not require kneeling, bending, and, or [sic] squatting." (Tr. 31.) Based on this RFC, the ALJ found at step four that Swathwood was unable to perform his past relevant work; however, at step five he determined that there are a significant number of jobs in the national economy that Swathwood could perform, including a surveillance monitor, inspector, document preparer, and "tape printed circuit." (Tr. 34-35.) Therefore, Swathwood was not entitled to DIB. (Tr. 35-36.) In reaching this decision, the ALJ determined that Swathwood's statements "concerning the intensity, duration, and limiting effects of [his] symptoms are not entirely credible." (Tr. 33.)

Swathwood's sole challenge to the ALJ's decision is that the ALJ improperly evaluated his credibility, namely as it relates to his alleged inability to concentrate. Ultimately, Swathwood's argument is unconvincing.

### C. The ALJ Properly Evaluated Swathwood's Credibility

Because the ALJ is in the best position to evaluate the credibility of a witness, his determination is entitled to special deference. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and articulates his analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988); *see Ottman v.*

7

*Barnhart*, 306 F. Supp. 2d 829, 838 (N.D. Ind. 2004), creating "an accurate and logical bridge between the evidence and the result," *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000), his determination will be upheld unless it is "patently wrong." *Powers*, 207 F.3d at 435; *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness").

When rendering his RFC determination, the ALJ first devoted three paragraphs to summarizing Swathwood's testimony, significantly writing: "The claimant stated that he had problems with memory and that he can only concentrate for 15-20 minutes. . . . The claimant added that his concentration is affected by his frustration/irritability." (Tr. 31-32.) After penning five additional paragraphs concerning the medical evidence, the ALJ concluded: "Upon considering the medical evidence of record, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms. However, the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (Tr. 33.) More specifically, the ALJ wrote:

> The medical evidence does not support the claimant's testimony that he is limited to lifting two gallons of milk. The medical evidence does not support the claimant's allegations of limited standing/walking. Therefore, the undersigned finds that the claimant's testimony is not wholly credible . . . . However, the undersigned finds that the claimant's testimony regarding loosing [sic] his balance when kneeling, bending and squatting is credible.

(Tr. 33-34.)

Finally, the ALJ gave "great weight" to the medical opinion of the ME "because it is supported by the medical evidence," noting specifically that the medical examinations and the objective medical findings have been essentially normal. (Tr. 33 (citation omitted).)

8

Swathwood's first attack on the ALJ's credibility determination is that "the ALJ only explicitly rejects the lifting/carrying and standing/walking limitations without mentioning the concentration and focus problems."[8] (Opening Br. 15.) The ALJ, however, "need not provide a complete written evaluation of every piece of testimony and evidence," so long as the Court "can track the ALJ's reasoning." *Nelson v. Apfel*, 131 F.3d 1228, 1237-38 (7th Cir. 1997) (explaining the ALJ's burden of minimum articulation).

Here, the Court is able to track the ALJ's reasoning, as the ALJ summarized Swathwood's allegations of problems concentrating before ultimately concluding that his "statements concerning the intensity, duration and limiting effects of [his] symptoms are not entirely credible." (Tr. 33); *Nelson*, 131 F.3d at 1237-38 (finding no flaws with the ALJ's failure to "specifically address each point raised through Nelson's testimony" because "we are certain he considered the important evidence"). Giving the ALJ's credibility determination a commonsensical reading, his general credibility finding envelopes Swathwood's specific allegations regarding his inability to concentrate. *See Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (requiring the court to "give the opinion a commonsensical reading rather than nitpicking at it") (quoting *Shramek*, 226 F.3d at 811)). Thus, the ALJ was not required to explicitly reject Swathwood's allegations that he cannot concentrate.

Swathwood's second challenge to the ALJ's credibility determination is somewhat incoherent, as he contends:

---

[8] Swathwood also maintains that his limitations are not related to his exertional performance but rather to his difficulties in focusing and paying attention to the task at hand. Contrary to Swathwood's assertion, he did indeed testify to some exertional limitations. For example, Swathwood claimed that he is unable to carry his daughter for two and one-half hours and that he gets dizzy and loses his balance when standing. Thus, there is nothing particularly flawed about the ALJ's specific rejection of Swathwood's alleged exertional limitations.

9

> [T]he ALJ does mention the medical opinion of the medical expert which he finds entitled to great weight because it is supported by the medical evidence. (Tr. 33) The ME testified that Mr. Swathwood's concentration and focus is not affected as "he apparently is satisfactory in that area, except for mild depression." (Tr. 352) Thus, his opinion is not based upon the objective medical evidence but the testimony. As noted above in the testimony of Mr. Swathwood and his wife his concentration and focusing is significantly affected.

(Opening Br. 15.) Swathwood seems to be suggesting that the ALJ's credibility determination was faulty because it was based on the testimony of the ME and not on objective medical evidence. However, prior to rendering his credibility determination, the ALJ penned five paragraphs reviewing the medical evidence and also noted later that the medical examinations and objective findings have been essentially normal; thus the ALJ clearly considered the objective medical evidence when rendering his credibility determination.[9] Indeed, the ALJ ultimately concluded that "*[u]pon considering the medical evidence of record*, . . . the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (Tr. 33 (emphasis added).)

Moreover, the social security regulations explicitly permit an ALJ "to consider opinions from medical experts on the nature and severity of your impairment(s)." 20 C.F.R. 404.1527(f)(2)(iii). Thus, the ALJ committed no improprieties when assigning "great weight" to the ME's testimony that Swathwood had no difficulties concentrating and when crediting this medical evidence over Swathwood's and his wife's subjective testimony. *See Arnold v.*

---

[9] In fact, as the Commissioner argues, "none of the treating, examining, or reviewing physicians or psychologists opined that [Swathwood] had limitations with regard to his ability to concentrate," a proposition that Swathwood does not dispute. (Mem. in Supp. of the Commissioner's Decision 10.) Instead, Swathwood's claims regarding his inability to concentrate are ostensibly based entirely on his and his wife's subjective complaints, as Swathwood cites no objective medical evidence, no medical opinions, and no other evidence in the record consistent with his allegations regarding his difficulty concentrating. *See* SSR 96-7p ("[A]n individual's symptoms . . . will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms *can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record*." (emphasis added).)

10

*Barnhart*, 473 F.3d 816, 821-23 (7th Cir. 2007) (concluding that the ALJ properly based his RFC and credibility determinations on the testimony of an ME). Indeed, Swathwood's attack on the ALJ's reliance on the ME is nothing more than an invitation to reweigh his subjective testimony against the ME's opinion, an invitation that the Court must decline. *See Clifford*, 227 F.3d at 869 ("In our substantial evidence determination, we . . . do not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner.").

Swathwood's final attack on the ALJ's credibility determination is that the ALJ committed legal error by failing to consider his alleged mental impairments in combination with his physical impairment when discrediting his testimony regarding his inability to concentrate. Swathwood, however, fails to explain how any consideration of his impairments in combination would impact the ALJ's credibility determination (or, for that matter, the ALJ's ultimate RFC determination),[10] nor does he cite any evidence from the record to support his contention that his alleged mental impairments aggravated his torticollis and his ability to concentrate.[11] *See Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."); *Rogers v. Barnhart*, 446 F. Supp. 2d 828, 857 (N.D. Ill. 2006) (noting that the claimant's "medical

---

[10] Even if the ALJ erred by failing to consider Swathwood's impairments in combination, such an error would be harmless unless it would impact the outcome of the ALJ's credibility determination. *See Shramek*, 226 F.3d at 814 (explaining that harmless errors are those that do not ultimately impact the outcome of the determination).

[11] In fact, when the ALJ specifically asked the ME if Swathwood's torticollis has "anything to do with . . . the ability to think, or like his focusing 15 to 20 minutes, or is this the mental side," the ME responded, "No, he apparently is satisfactory in that area, except for a mild depression." (Tr. 352-53.) This response seemingly indicates that even if Swathwood's torticollis and his mental impairments are considered in combination, he still does not have difficulty concentrating.

records are devoid of even a suggestion that her weight had an adverse effect on her ability to work or so aggravated her other impairments as to render them disabling").

In fact, the only so-called "explanation" Swathwood offers in support of his argument is his own testimony that his head turns to the right and shakes, which distracts him, and his wife's testimony that his torticollis frustrates him and angers him, that it is difficult for him to sustain a task, and that even watching television for fifteen to twenty minutes can frustrate him. This "explanation" is nothing more than a circular argument, as Swathwood is ostensibly contending that it was legal error to discredit the subjective testimony regarding his alleged inability to concentrate because it is supported by the subjective testimony regarding his alleged inability to concentrate. Moreover, this testimony only relates to the problems in concentration Swathwood experienced as a result of his torticollis, thus failing to reveal how his alleged learning disability, depression, and anxiety made his problems with concentration more serious.[12] *See Rogers*, 446 F. Supp. 2d at 857.

Furthermore, the ALJ specifically addressed Swathwood's alleged psychiatric conditions in his opinion, writing:

> The medical evidence also reveals that the claimant suffers from adjustment disorder, but he has only slight impairments in the ability to understand, remember, and carry out instructions and that the claimant has no restrictions in the ability to respond appropriately to supervision, co-workers, and work pressure in a work setting. Therefore, the Administrative Law Judge finds that this medical impairment is not a severe impairment.

(Tr. 31.) Thus, the ALJ did not turn a blind eye to Swathwood's minimal psychiatric problems

---

[12] Insofar as Swathwood is suggesting that his frustration and irritability are mental impairments that aggravate his ability to concentrate, it is clear that the ALJ considered these impairments in combination before discrediting Swathwood, as he wrote: "The claimant added that his concentration is affected by his frustration/irritability." (Tr. 32.)

12

and subsequently did not err when assessing them. *Cf. Clifford*, 227 F.3d at 873 ("The ALJ, rather than blind himself to this condition (and other relevant evidence), should have considered the weight issue with the aggregate effect of her other impairments."); *see also Johnson v. Barnhart*, 449 F.3d 804, 807 (7th Cir. 2006) (citing *Mendez v. Barnhart*, 439 F.3d 360, 363 (7th Cir. 2006); *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005)) (rejecting claimant's argument that the ALJ "failed to explore the possible effects of her obesity," which purportedly aggravated her joint problems, particularly since her obesity was not an "extreme" problem).

## IV. CONCLUSION

In sum, because the ALJ properly assessed Swathwood's credibility, the ALJ's decision is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Swathwood.

SO ORDERED.

Enter for August 7, 2007.

S/ Roger B. Cosbey  
Roger B. Cosbey  
United States Magistrate Judge